**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq. (KR 4963)
S. Jason Teele, Esq. (SJT 7390)
Timothy R. Wheeler, Esq. (TW 3466)
Wojciech F. Jung, Esq. (WJ 2047)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Counsel to the Debtor and Debtor in Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>EPV SOLAR, INC.,<br><br>　　　　　　　Debtor. | Chapter 11<br><br>Case No. 10-15173 (MBK) |

**DEBTOR'S APPLICATION FOR AN ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTOR'S RETENTION AND EMPLOYMENT OF JEFFERIES & COMPANY, INC. AS INVESTMENT BANKER, *NUNC PRO TUNC* TO MARCH 20, 2010**

EPV Solar, Inc., the above-captioned debtor and debtor-in-possession ("EPV" or the "Debtor"), by and through its undersigned counsel, submits this application (the "Application"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order authorizing and approving the retention and employment of Jefferies & Company, Inc. ("Jefferies") as investment banker for the Debtor, *nunc pro tunc* to March 20, 2010. In support of the Application, the Debtor relies upon and incorporates by reference the declaration annexed hereto as Exhibit A (the "Jefferies Declaration"). In further support of this Application, the Debtor respectfully states as follows:

04/07/2010 14049076.6

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein are sections 327 and 328 of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016.

## BACKGROUND

2.      On February 24, 2010 (the "Petition Date"), the Debtor filed a voluntary petition pursuant to chapter 11 of the Bankruptcy Code.

3.      The Debtor continues to operate its business and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in this chapter 11 case.  On March 10, 2010, the United States Trustee appointed an official committee of unsecured creditors.

4.      The Debtor is a New Jersey corporation that designs, develops, manufactures, and markets low-cost amorphous silicon thin-film photovoltaic solar modules for the growing international renewable energy market.  The Debtor has designed several thin-film photovoltaic manufacturing facilities around the world that utilize its proprietary manufacturing equipment and technology.

5.      Following its strenuous efforts to raise capital during the recent economic downturn, in mid-2009 the Debtor discontinued its manufacturing operations.  The Debtor switched focus on selling its remaining inventory and preserving the value of the enterprise for a sale.  Simultaneously, the Debtor prepared for the solicitation of interests from potential buyers in acquiring its manufacturing operations.  The Debtor received an unsolicited offer for its manufacturing assets from Akart Anerji Yatirimlari A.S. ("Akart") that resulted in the Debtor's September 24, 2009 entry into a letter of intent with Akart to sell substantially all of

the Debtor's assets for the aggregate purchase price of $52.5 million (the "Akart Asset Sale"). Subsequently, on December 7, 2009, the parties entered into definitive sale agreements with the Akart Asset Sale scheduled to close by January 15, 2010.

6. Akart was unable to secure adequate financing to consummate the Akart Asset Sale. As a result of the failure to consummate the Akart Asset Sale and the continuing pressure of the Debtor's leverage position, the Debtor took the unavoidable step of commencing this chapter 11 case to preserve the value of its assets, explore a sale of its a-Si PV manufacturing assets and reorganize around its core equipment business.

7. Although the Debtor took the necessary steps to start marketing (without having retained an investment banker to assist it in that effort) for sale its manufacturing business prior to the Petition Date, those marketing efforts were very limited. A certain Share Purchase Agreement executed by the Debtor and Akart in connection with the Akart Asset Sale provided for the payment of a break-up fee equal to $2 million by the party who withdraws from the agreement before closing of the transaction. This provision effectively precluded the Debtor from soliciting alternative transactions once the Akart agreement was executed.

8. The Debtor requires the assistance of an investment banker, such as Jefferies, to conduct a robust and uninhibited marketing and sale process of its manufacturing business. The Debtor believes the proposed retention of Jefferies will maximize the value of its assets for the benefit of its creditors and stakeholders.

9. For additional information about the Debtor's history and business and the events leading to this chapter 11 case, the Debtor respectfully refers the Court and parties-in-interest to the Certification in Support of the Debtor's Petition and First Day Motions (Docket No. 2).

## RELIEF REQUESTED

10. By this Application, the Debtor seeks entry of an order, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016, authorizing the retention and employment of Jefferies as investment banker, *nunc pro tunc* to March 20, 2010.

## BASIS FOR RELIEF REQUESTED

11. Bankruptcy Code section 327(a) provides, in relevant part, as follows:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professionals persons, that do not hold or represent an interest adverse to the estates, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

12. Bankruptcy Code section 328(a) provides, in relevant part, as follows:

> The trustee ... with the court's approval, may employ or authorize the employment of a professional person under section 327... of this title … on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

*Id.* at § 328(a).

13. Bankruptcy Rule 2014 provides, in relevant part, as follows:

> An order approving the employment of financial advisors … or other professionals pursuant to § 327... of the Code shall be made only on application of the trustee or committee.

Fed. R. Bankr. P. 2014.

14. Local Rule 2014-1 provides, in relevant part, as follows:

-4-

> In addition to the requirements of Fed. R. Bankr. P. 2014, an application for an order approving employment of a professional person shall be served upon the debtor, the trustee, the secured creditors, the official committees, and parties requesting notice of all proceedings.

D.N.J. LBR 2014-1(a).

15. The terms of the Debtor's proposed retention of Jefferies are set forth in an engagement letter between the Debtor and Jefferies (the "<u>Engagement Letter</u>"), a copy of which is attached hereto as <u>Exhibit B</u> and incorporated herein by reference.

A. <u>Qualifications</u>

16. The Debtor believes that Jefferies and the professionals it employs are uniquely qualified to advise the Debtor in the matters for which Jefferies is proposed to be employed.

17. The Debtor has selected Jefferies based on its experience and expertise in providing investment banking services in chapter 11 cases throughout the country, and based on the familiarity of Jefferies with the Debtor's business and the industry in which it operates. Jefferies has substantial expertise in advising troubled companies in connection with restructurings, asset sales and related issues. Furthermore, Jefferies has become familiar with the Debtor's business and financial affairs as a result of services provided to the Debtor prior to the Petition Date. In consideration of the familiarity and institutional knowledge of the Debtor that Jefferies has gained from its pre-petition relationship with the Debtor, the Debtor submits that the retention of Jefferies is in the best interests of the Debtor's estates and creditors and should be approved *nunc pro tunc* to March 20, 2010.

B.   <u>Services to be Provided</u>[1]

18.   As more fully set forth in the Engagement Letter, the services that Jefferies will provide to the Debtor can be separated into three categories:

- <u>Restructuring</u>. In connection with restructuring services, Jefferies will:

    (a)   become familiar with, to the extent Jefferies deems appropriate, and analyze the business, operations, assets, financial condition and prospects of the Debtor;

    (b)   advise the Debtor on the current state of the "restructuring market";

    (c)   assist and advise the Debtor in developing, examining, analyzing, and where appropriate implementing, any potential or proposed strategy for selling assets, or adjusting the Debtor's outstanding indebtedness (including, without limitation, the 1.0% Convertible Senior Secured PIK Notes due 2016 (the "<u>Notes</u>") or overall capital structure, whether pursuant to a plan of reorganization under chapter 11 of the Bankruptcy Code, or otherwise (the "<u>Restructuring</u>"), including the valuation of any securities that may be issued in connection therewith.

- <u>M&A Transaction</u>. Jefferies will provide the Debtor with financial advice and assistance in connection with a possible sale or other business transaction or series of transactions (including a sale of assets or equity under section 363 of the Bankruptcy Code and including any credit bid made pursuant to section 363(k) of the Bankruptcy Code) involving all or a material portion of the Debtor's or any subsidiary's equity or assets, through any form of transaction, including, without limitation, merger, reverse merger, liquidation, stock purchase, asset purchase, recapitalization, reorganization, consolidation, amalgamation or other transaction (any of the foregoing, an "<u>M&A Transaction</u>"). In connection therewith, Jefferies will:

---

[1] The ensuing discussion is only a summary of the services to be provided by Jefferies. To the extent that this summary conflicts with the Engagement Letter, the Engagement Letter shall govern.

- (a) Assist the Debtor in developing a list of suitable potential buyers who will be contacted after approval by the Debtor;

- (b) Coordinate the execution of confidentiality agreements for potential buyers;

- (c) Coordinate the data room and the due diligence investigations of potential buyers;

- (d) Assist the Debtor in coordinating site visits for interested buyers and work with the management team to develop appropriate presentations for such visits;

- (e) Provide updated lists of all potential buyers contacted, the status of each contact and next steps;

- (f) Solicit offers from potential buyers;

- (g) Assist the Debtor in evaluating proposals received from potential buyers;

- (h) Advise and assist the Debtor in structuring the transaction and negotiating the transaction agreements;

- (i) Provide testimony on behalf of the Debtor related to the sale process or any other matters related to Jefferies' investment banking assignment for the Debtor; and

- (j) Provide other assistance to the Debtor, its attorneys and accountants, as may be agreed upon by Jefferies and the Debtor.

o Financing: In addition to the Restructuring and M&A Transaction services, the Debtor seeks to retain Jefferies as its sole and exclusive manager, bookrunner, placement agent, arranger, underwriter and/or initial purchaser, as the case may be, in connection with the structuring, issuance, sale or placement (any or all of the foregoing, including an exit financing, the "Financing", and each of a Financing, a Restructuring and an M&A Transaction, individually and collectively, a "Transaction"), whether in one or more public or private transactions, of (i) debt securities of the Debtor ("Debt Securities"), (ii) preferred or common equity or equity-linked securities of the Debtor (collectively, "Equity Securities") and/or (iii) bank debt or a similar credit facility of the Debtor ("Bank

Debt", and any or a combination of Bank Debt, Equity Securities and/or Debt Securities, "Instruments") during the term of the Engagement Letter; provided, however that the debtor-in-possession financing obtained by the Debtor from the ad hoc committee of bond holders as well as any amendment, modification, supplement, extension, repayment, reborrowing, increase, replacement, renewal, restatement or refinancing thereof involving the ad hoc committee of bond holders shall not be deemed to be a Financing.

19. The Debtor requires qualified professionals to render these essential professional services. As noted above, Jefferies has substantial expertise in all of the areas for which it is proposed to be retained and is familiar with the Debtor's business. Accordingly, the Debtor submits that Jefferies is well qualified and best suited to perform these services and assist the Debtor in this chapter 11 case.

C. Compensation[2]

20. Subject to the provisions of sections 327(a) and 328(a), as incorporated in section 330 of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, the Debtor requests approval of the following fee structure (the "Fee Structure"):

    (a)    Monthly Fee: equal to $100,000 per month for the first three months of the engagement and $75,000 per month thereafter until the expiration or termination of the Engagement Letter. The first Monthly Fee is be payable within 2 business days of the entry of an order by the Court approving Jefferies' retention (the first fee being deemed to have been due on March 20, 2010), and each subsequent Monthly Fee will be payable in advance on each monthly anniversary of March 20, 2010. The Debtor may credit, against the Transaction Fee otherwise due to Jefferies under Section 4(b) of the Engagement Letter (but in no event shall the Transaction Fee be less than $0), all amounts of the Monthly Fee

---

[2] The ensuing discussion is only a summary of the compensation structure agreed to by the Debtor and Jefferies. To the extent that this summary conflicts with the Engagement Letter, the Engagement Letter shall govern.

-8-

>>payable to Jefferies under Section 4(a) of the Engagement Letter in excess of $300,000.

>(b) <u>M&A Transaction Fee</u>[3]: upon consummation of an M&A Transaction, a fee equal to:

>>i. the greater of the aggregate Monthly Fees paid to Jefferies or $500,000, if Aggregate Transaction Value[4] is less than $20 million, or

---

[3] Notwithstanding the M&A Transaction Fee formula as set forth below, in the event that the Debtor consummates the AKART Transaction (defined below), the total Transaction Fee payable to Jefferies shall be the lower of (i) the amount that would be payable pursuant to Section 4(a) and Section 4(b) of the Engagement Letter and (ii) $1,500,000. "<u>AKART Transaction</u>" shall mean the sale of the Debtor's Senftenberg, Germany manufacturing facility and Hamilton, NJ manufacturing facility to Akart or its wholly owned subsidiary AKART Enerji Fabrika Anonim Siirketi (each and together, "<u>AKART</u>"), on substantially the terms set forth in the transaction documents dated December 7, 2009 (the "<u>Current AKART Transaction Documents</u>"), with such amendments as necessary to provide for the requirement of Bankruptcy Court approval of such M&A Transaction (including, without limitation, compliance with 363 sale procedures and overbid protection) the new equity participant's fees and compensation and the modifications to the project timeline set forth in the transaction documents; <u>provided</u>, <u>however</u>, that no cap shall apply in the event that AKART is not the stalking horse bidder and/or the stalking horse or the actual purchase price payable in connection with the AKART Transaction exceed by more than $500,000 the purchase price set forth in the Current AKART Transaction Documents.

[4] Aggregate Transaction Value is defined as the sum of the Transaction Values for all consummated M&A Transactions. "<u>Transaction Value</u>" in turn is defined as (A) the aggregate amount of cash and the fair market value (determined as set forth below) of any securities or other property or consideration directly or indirectly paid in connection with a M&A Transaction, including, (1) the full amount of any consideration placed in escrow or otherwise withheld to support the Debtor's (or its stockholders') indemnification or similar obligations under the definitive documents with respect to the M&A Transaction, and the full amount of any payments in installments (such escrow and consideration paid in installments, "<u>Escrow Consideration</u>"); and (2) the present value of any contingent consideration to be paid in the future, including earn-outs ("<u>Contingent Consideration</u>"), discounted on the basis of a 6% discount rate; <u>provided</u> that the portion of the Transaction Fee attributable to any Escrow Consideration or Contingent Consideration (collectively, "<u>Deferred Consideration</u>") that is in the aggregate less than 15% of the total Transaction Value shall be paid to Jefferies only if, when and as released from escrow or actually paid (with the portion of the Transaction Fee attributable to Deferred Consideration that is in the aggregate in excess of 15% of the Transaction Value being paid to Jefferies upon the consummation of a Transaction); plus (B) all indebtedness for borrowed money (other than money borrowed from affiliates) and other liabilities (whether consolidated, off-balance sheet or otherwise); <u>provided</u>, <u>however</u>, that any indebtedness and

    ii.    $900,000 if the Aggregate Transaction Value is equal to or greater than $20 million, plus;

    iii.    $175,000 if the Aggregate Transaction Value is equal to or greater than $25 million, plus;

    iv.    $125,000 if the Aggregate Transaction Value is equal to or greater than $30 million, plus;

    v.    7.5% of every dollar of the Aggregate Transaction Value that is in excess of $40 million and less than $50 million, plus;

    vi.    10.0% of every dollar of the Aggregate Transaction Value that is in excess of $50 million.

At Jefferies' election, the minimum fee payable to Jefferies for each consummated M&A Transaction shall be $250,000 (the "Minimum Fee"); provided, however, that the Debtor shall be permitted to credit, against the Minimum Fee due to Jefferies, all amounts of the Monthly Fee paid to Jefferies under Section 4(a) of the Engagement Letter that have not previously been credited against a Minimum Fee or a Transaction Fee.

(c)    Break-Up Fee: If, following or in connection with the termination, abandonment or failure to occur of any proposed M&A Transaction, during the term of the engagement or during the twelve-month period following the date of termination of the engagement, the Debtor or any affiliate is entitled to receive a break-up, termination, "topping", expense reimbursement, earnest money payment or similar fee or payment (including, without limitation, any judgment for damages or amount in settlement of any dispute as a result of such termination, abandonment or failure to occur), Jefferies shall be entitled to a cash fee (the "Break-Up Fee"), payable promptly following the Debtor's or such affiliate's receipt of such amount, equal to 25% of the aggregate amount of all fees, payments, judgments or amounts paid to the Debtor or such affiliate; provided, however, that, the Break-Up Fee shall not be greater than the M&A Transaction Fee that would have been payable had the proposed M&A Transaction been consummated and provided further that if an M&A Transaction is ultimately consummated and a Transaction Fee is payable to Jefferies in connection therewith, any Break-Up Fee previously paid by the Debtor shall be credited against such Transaction Fee.

---

other liabilities released in connection with the Case or that are not assumed or extinguished by a purchaser shall not be deemed to be part of the Transaction Value.

    (d)    <u>Expenses</u>: In addition to the foregoing fees, whether or not any Transaction occurs, the Debtor will reimburse Jefferies for all reasonable out-of-pocket expenses incurred in connection with the subject matter of the Jefferies' engagement in an amount not to exceed $100,000 in the aggregate without a prior written consent of the Debtor.

21.    The Fee Structure is consistent with Jefferies' typical fee for work of this nature. The Debtor believes that the fees are set at a level designed to compensate Jefferies fairly for the work of its professionals and assistants and to cover fixed and routine overhead expenses. The Debtor understands that it is Jefferies' policy to charge its clients for all disbursements and expenses incurred in the rendition of services.

    D.    <u>Waiver of Claims</u>: Upon entry of a final order by the Bankruptcy Court approving the engagement, the Engagement Letter provides for mutual releases of claims that the parties may have against each other as of March 20, 2010 as follows:

    (a)    The Debtor waives, releases and forever discharges Jefferies and any and all of Jefferies' predecessors, successors, assigns, affiliates, related entities and past, present and future members, representatives, agents, directors, officers and employees (of either Jefferies or any and all of Jefferies' predecessors, successors, assigns, affiliates and related entities), individually and in their official capacities, of and from any and all causes of action, claims, damages, judgments or agreements of any kind, whether known or unknown, from the beginning of time to March 20, 2010 including, but not limited to, any pending, potential or contemplated litigation or arbitration between the Debtor and Jefferies. This release excludes any claims that may arise directly out of the Engagement Letter.

    (b)    Jefferies waives, releases and forever discharges the Debtor from liability relating to any debt or equity of the Debtor that may be held by, or was held by, Jefferies or any member of the Jefferies Group (as defined in the Engagement Letter), and hereby disclaims any interest in or rights pursuant to (financial or otherwise) any such debt or equity of the Debtor.

-11-

22. Prior to the Petition Date, Jefferies acted as the Debtor's agent in connection with the sale of certain auction-rate securities. In connection with the sale of said securities, the Debtor realized approximately 80% on account of their value. Although the Debtor may have claims against Jefferies stemming from the Jefferies' sale of the Debtor's auction-rate securities, the Debtor believes that the value of those claims, if any, is less than the value of the Jefferies' services provided under the Engagement Letter under the Fee Structure set forth therein.

23. The Debtor understands that it is not the general practice of investment banking and financial advisory firms to keep detailed time records similar to those customarily kept by attorneys. Jefferies' restructuring professionals, when formally retained in chapter 11 cases, and when required by local rules, do, and in this chapter 11 case will, keep time records describing their general daily activities, the identity of persons who performed such tasks and the estimated amount of time expended on each activity on a daily basis. Jefferies' restructuring personnel do not maintain their time records on a "project category" basis. The Debtor believes that for Jefferies to recreate the time entries for its restructuring personnel and require its non-restructuring personnel to record their time as prescribed by the Local Rules would be, in each case, unduly burdensome and time-consuming.

24. The Fee Structure is comparable to those generally charged by financial advisory and investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of court, and reflect a balance between a fixed, monthly fee, and a contingency amount which is tied to the consummation and closing of the transactions contemplated in the Engagement Letter. The Fee Structure was negotiated by the Debtor's and Jefferies' professionals at arms' length and in good faith and the Debtor believes that the Fee Structure is favorable to the estate and creditors.

25. The Debtor further requests that the fees payable to Jefferies, including the M&A Transaction Fee, not be subject to the standard of review in section 330 of the Bankruptcy Code. Rather, the Debtor submits that based on section 328(a) of the Bankruptcy Code, the compensation of Jefferies and the proposed Fee Structure should be approved unless such compensation "prove[s] to have been improvident in light of developments not capable of being anticipated at the time" the Fee Structure originally was approved. 11 U.S.C. § 328(a). See In re HomeBanc Mortgage Corporation, Case No. 07-11079 (KJC) (Bankr. D. Del. October 2, 2007) (approval of section 328 review of investment banker's fees in sale case); In re Joan Fabrics Corporation, Case No. 07-10479 (CSS) (Bankr. D. Del. June 7, 2007) (approving section 328 review for NatCity's fees in sale case); In re Foamex International Inc., Case No. 05-12685 (PJW) (Bankr. D. Del. October 17, 2005) (approval of section 328 review of investment banker's fees).

26. In sum, in addition to the procedures set forth in the Engagement Letter, the Debtor requests that the compensation and reimbursement of the expenses of Jefferies in this chapter 11 case be governed by the following procedures:

    (a)    Jefferies will file interim and final fee applications for the allowance of compensation for services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.

27. In numerous Chapter 11 proceedings in this District, a debtor in possession's retention of an investment banker pursuant to Section 328(a) of the Bankruptcy Code has received court approval. Those cases include, among others, In re EnCap Golf Holdings, LLC and NJM Capital, LLC, Case Nos. 08-18581 (NLW) and 08-18590 (NLW); In re Integral Nuclear Associates, LLC, et al., Case No. 07-15183 (NLW); In re Best Manufacturing Group LLC, et al., Case No. 06-17415 (DHS); and In re Marcal Paper Mills, Inc., Case No. 06-

21886 (MS). The Debtor respectfully submits that the proposed compensation of Jefferies is reasonable and should be approved under Section 328(a) of the Bankruptcy Code.

E.     Indemnification

28.    As more fully described in Schedule A of the Engagement Letter (the "Indemnification Provision"), the Debtor has also agreed to indemnify, defend and hold harmless Jefferies and its affiliates, the respective partners, directors, officers, agents and employees of Jefferies and its affiliates and each other person, if any, controlling Jefferies or its affiliates (the foregoing being referred to herein individually as an "Indemnified Party" and collectively as the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities or costs, as and when incurred, to which such Indemnified Party may become subject to or which are asserted against any Indemnified Party, directly or indirectly, in any way related to the acts of Jefferies for the Debtor under the Engagement Letter in connection with (i) any act or omission by Jefferies related to its engagement as investment banker under the Engagement Letter, or (ii) the acceptance of Jefferies, or its performance or non-performance, of its obligations under the Engagement Letter, except to the extent that any losses, claims, damages, liabilities or costs resulting from the acts, omissions, acceptance, performance or non-performance of Jefferies specified above, are found to be the primary product of the gross negligence or willful misconduct of Jefferies.

29.    Although not provided for in the Indemnification Provision, Jefferies agrees that if before the earlier of (i) the entry of an order confirming a chapter 11 plan in the Debtor's case (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing this chapter 11 case, Jefferies believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Indemnification Provision, as modified herein, including, without limitation, the advancement of defense costs, Jefferies will file an application with the

Court for payment of such amounts, and the Debtor may not pay such amounts to Jefferies before the entry of an order by this Court approving the payment.

30. The Debtor believes that the Indemnification Provision is customary and reasonable for investment bankers, both out-of-court and in chapter 11 proceedings. See, e.g., In re United Artists Theatre Company, 315 F.3d 217 (3d Cir. 2003) (authorizing the indemnification of Houlihan Lokey by the debtors); In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000). The Indemnification Provision is also similar to other indemnification provisions that have been approved by bankruptcy courts in this Circuit. See, e.g., In re Sharper Image Corp., Case No. 08-10322 (KG) (Bankr. D. Del. May 14, 2008) (order authorizing retention of Gemini Valuation Services, LLC on similar terms); In re Premium Papers Holdco, LLC, Case No. 06-10269 (CSS) (Bankr. D. Del. May 3, 2006) (order authorizing retention of Giuliani Capital Advisors on similar terms); In re Burlington Industries, Inc., Case No. 01-11282 (RJN) (Bankr. D. Del. May 21, 2003) (order authorizing retention of Hostmann on similar terms); In re Oakwood Homes Corporation, Case No. 02-13396 (PJW) (Bankr. D. Del. July 21, 2003) (same).

F. Disinterestedness

31. As more fully set forth in the Jefferies Declaration and to the best of the Debtor's knowledge, information and belief, other than in connection with this case and prepetition services to provided to the Debtor, Jefferies does not have any connection with the Debtor, its creditors, the U.S. Trustee or any other party with an actual or potential interest in this chapter 11 case or their respective attorneys or accountants.

32. Therefore, the Debtor submits that Jefferies does not hold or represent interests adverse to the Debtor's estate, that Jefferies is a "disinterested person" as such term is defined under section 101(14), as modified by section 1107(b), of the Bankruptcy Code, and that

-15-

the employment of Jefferies as the Debtor's investment banker is necessary and in the best interests of the Debtor, its estate, creditors and interest holders.

## NOTICE

33.    Notice of this Application has been provided to: (i) the Office of the United States Trustee; (ii) the United States Securities and Exchange Commission; (iii) the Office of the United States Attorney for the District of New Jersey; (iv) the Internal Revenue Service; (v) counsel to the Committee; (vi) counsel to the agents for the Debtor's pre-petition loan facilities; (vii) counsel to the Debtor's post-petition lenders; (viii) the indenture trustee for the Debtor's pre-petition notes; (ix) all parties on who entered a notice of appearance pursuant to Fed.R.Bankr.P. 2002; and (x) all other known parties in interest, as required by D.N.J. LBR 2014-1.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## NO PRIOR REQUEST

34.    No previous Application for the relief sought herein has been made to this or to any other court.

## WAIVER OF BRIEF

35.    As no novel issue of law is raised and the relevant authorities relied upon by the Debtor are set forth herein, the Debtor respectfully requests that the requirement of D.N.J. LBR 9013-2 of filing a brief be waived.

*[remainder of page intentionally left blank]*

Case 10-15173-MBK    Doc 183    Filed 04/07/10    Entered 04/07/10 20:17:21    Desc Main
Document    Page 17 of 17

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order, substantially in the form submitted herewith, (i) authorizing the Debtor to employ and retain Jefferies as their investment banker, *nunc pro tunc* to March 20, 2010, pursuant to the terms of the Engagement Letter, as modified herein, (ii) granting such other and further relief as this Court deems just and proper.

Dated: April 7, 2010

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

 /s/    S. Jason Teele
Kenneth A. Rosen, Esq. (KR 4963)
S. Jason Teele, Esq. (SJT 7390)
Timothy R. Wheeler, Esq. (TW 3466)
Wojciech F. Jung, Esq. (WJ 2047)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400

*Counsel to the Debtor and Debtor in Possession*

-17-