# EXHIBIT B

<u>Strictly Confidential</u>

Engagement Letter

As of March 20, 2010

**EPV SOLAR, Inc.**
8 Marlen Drive
Robbinsville, NJ 08691
Facsimile: 609-570-3015

Attention:   Howard W. Brodie (h.brodie@epvsolar.com)
             Vice President

Re: <u>Advisory Services; Financing Transaction</u>

This agreement (the "<u>Agreement</u>") confirms that Jefferies & Company, Inc. ("<u>Jefferies</u>") has been engaged by EPV SOLAR, Inc., a New Jersey corporation, and its wholly owned subsidiaries (collectively, the "<u>Company</u>") to act as financial advisor to the Company, including in the bankruptcy case of EPV SOLAR, Inc. (the "<u>Case</u>").

1.   <u>Services</u>.

     (a)   <u>Restructuring</u>. During the term of this Agreement, and as mutually agreed upon by Jefferies and the Company and as appropriate, Jefferies will:

          (i)   become familiar with, to the extent Jefferies deems appropriate, and analyze the business, operations, assets, financial condition and prospects of the Company;

          (ii)  advise the Company on the current state of the "restructuring market";

          (iii) assist and advise the Company in developing, examining, analyzing, and where appropriate implementing, any potential or proposed strategy for selling assets, or adjusting the Company's outstanding indebtedness (including, without limitation, the 1.0% Convertible Senior Secured PIK Notes due 2016 (the "<u>Notes</u>") or overall capital structure, whether pursuant to a plan of reorganization under chapter 11, Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), or otherwise (the "<u>Restructuring</u>"), including the valuation of any securities that may be issued in connection therewith.

     (b)   <u>M&A Transaction</u>. Furthermore, during the term of this Agreement, and as mutually agreed upon by Jefferies and the Company, Jefferies will provide the Company with financial advice and assistance in connection with a possible sale or other business transaction or series of transactions (including a sale of assets or equity under section 363 of the Bankruptcy Code and including any credit bid made pursuant to section 363(k) of the Bankruptcy Code) involving all or a material portion of the Company's or any subsidiary's equity or assets, through any form of transaction,

**EPV SOLAR, Inc.**

As of March 20, 2010
Page 2

including, without limitation, merger, reverse merger, liquidation, stock purchase, asset purchase, recapitalization, reorganization, consolidation, amalgamation or other transaction (any of the foregoing, an "M&A Transaction"). In connection therewith and as mutually agreed upon by Jefferies and the Company and as Jefferies deems appropriate, Jefferies will:

(i)     Assist the Company in developing a list of suitable potential buyers who will be contacted after approval by the Company;

(ii)    Coordinate the execution of confidentiality agreements for potential buyers;

(iii)   Coordinate the data room and the due diligence investigations of potential buyers;

(iv)    Assist the Company in coordinating site visits for interested buyers and work with the management team to develop appropriate presentations for such visits;

(v)     Provide updated lists of all potential buyers contacted, the status of each contact and next steps;

(vi)    Solicit offers from potential buyers;

(vii)   Assist the Company in evaluating proposals received from potential buyers;

(viii)  Advise and assist the Company in structuring the transaction and negotiating the transaction agreements;

(ix)    Provide testimony on behalf of the Company related to the sale process or any other matters related to Jefferies' investment banking assignment for the Company; and

(x)     Provide other assistance to the Company, its attorneys and accountants, as may be agreed upon by Jefferies and the Company.

(c)    Financing.

(i)     In addition, the Company hereby retains Jefferies and Jefferies shall have the right to act as sole and exclusive manager, bookrunner, placement agent, arranger, underwriter and/or initial purchaser, as the case may be, in connection with the structuring, issuance, sale or placement (any or all of the foregoing, including an exit financing, the "Financing", and each of a Financing, a Restructuring and an M&A Transaction, individually and collectively, a "Transaction"), whether in one or more

EPV SOLAR, Inc.
As of March 20, 2010
Page 3

public or private transactions, of (i) debt securities of the Company ("Debt Securities"), (ii) preferred or common equity or equity-linked securities of the Company (collectively, "Equity Securities") and/or (iii) bank debt or a similar credit facility of the Company ("Bank Debt", and any or a combination of Bank Debt, Equity Securities and/or Debt Securities, "Instruments") during the term of this Agreement; provided, however that the debtor-in-possession financing obtained by the Company from the ad hoc committee of bond holders as well as any amendment, modification, supplement, extension, repayment, reborrowing, increase, replacement, renewal, restatement or refinancing thereof (the "DIP Loan") involving the ad hoc committee of bond holders shall not be deemed to be a Financing. The Company agrees that no other titles will be awarded in connection with any Financing without the written consent of Jefferies.

(ii) Notwithstanding the foregoing, it is understood and agreed that Jefferies reserves the right not to participate in any proposed Financing, and the foregoing is not an agreement by Jefferies to underwrite, place or purchase any Instruments. In connection with any Financing in which Jefferies elects to participate, the Company shall enter into an underwriting agreement, placement agency agreement, credit agreement or purchase agreement, as applicable, with Jefferies, which agreement shall be based on Jefferies' customary form for the applicable Financing (a "Definitive Agreement"). Jefferies shall have no obligation hereunder to act as underwriter, placement agent, arranger or initial purchaser with respect to any Instruments unless and until Jefferies has executed a Definitive Agreement. For the avoidance of doubt, if a Financing is executed in more than one issuance or tranche, each shall be deemed to be a Financing for the purposes of this Agreement.

2.  Cooperation.

(a) The Company shall furnish Jefferies with all current and historical materials and information regarding the business and financial condition of the Company, which the Company believes are relevant to the transactions contemplated hereby and all information and data that Jefferies shall reasonably request in connection with Jefferies' activities hereunder (all such information so furnished being the "Information"), and if necessary, all solicitation materials prepared by the Company (and provided to Jefferies for comments) with respect to the Company (such solicitation materials, including all exhibits, amendments or supplements thereto, the "Solicitation Materials"). In addition, the Company shall provide Jefferies full access, as requested, to the Company's officers, directors, employees and professional advisors. The Company agrees to promptly advise Jefferies of all developments materially affecting the Company, any proposed Transaction or the accuracy of the information previously furnished to Jefferies by the Company, and agrees to take commercially reasonable efforts to ensure that no material initiatives relating to the proposed Transaction will be taken without Jefferies having been informed in advance thereof. If the Company or, to the Company's knowledge, any of its stockholders, affiliates or other advisors or representatives are contacted by any person concerning a potential Transaction, the Company will inform Jefferies of such inquiry, and all relevant details thereof.

EPV SOLAR, Inc.
As of March 20, 2010
Page 4

    (b)    The Company further acknowledges that Jefferies (i) will be relying on information and data provided by the Company and available from generally recognized public sources, without having independently verified the accuracy or completeness thereof, (ii) does not assume responsibility for the accuracy or completeness of any such information and data and (iii) has not made, and will not make, any physical inspection or appraisal of the properties or assets of the Company and. with respect to any financial forecasts that may be furnished to or discussed with Jefferies by the Company, the Company acknowledges that Jefferies will assume that such forecasts have been reasonably prepared and reflect the best then currently available estimates and judgments of the Company's management as to the expected future financial performance of the Company.

    (c)    In connection with an M&A Transaction, as and if appropriate, Jefferies will assist the Company in preparing a customary confidential information memorandum or short-form teaser memorandum with regard to the Company to use in connection with the M&A Transaction, which the Company agrees shall not contain any untrue statement of material fact, or omit to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they were made, not misleading.

    (d)    The Company acknowledges that this assignment may lead to an outcome not anticipated in this Agreement. In the event that circumstances have changed such that this engagement requires more of Jefferies' time and efforts than originally anticipated, the Company agrees to meet and confer with Jefferies in good faith to determine the appropriate additional fees for Jefferies' services.

3.    <u>Use of Name. Advice. etc.</u>

    (a)    No advice provided by Jefferies may be disclosed, in whole or in part, or summarized, excerpted from or otherwise referred to without Jefferies' prior written consent (not to be unreasonably withheld). In addition, the Company agrees that any reference to Jefferies in any release, communication, or other material is subject to Jefferies' prior written approval, which may be given or withheld in its reasonable discretion, for each such reference.

    (b)    Jefferies' advice is solely for the use and information of the Company's management and the Board, and is only to be used in considering the matters to which this Agreement relates. Such advice may not be relied upon by any other person.

4.    <u>Compensation</u>. The Company agrees to pay Jefferies each of the following:

    (a)    A monthly fee (the "<u>Monthly Fee</u>") equal to $100,000 per month for the first three months of this Agreement and $75,000 per month thereafter until the expiration or termination of this Agreement. The first Monthly Fee shall be payable within 2 business days of the entry of an order by the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Case (the "<u>Bankruptcy Court</u>") approving Jefferies' retention (the first fee being deemed to have been due on March 20,

EPV SOLAR, Inc.

As of March 20, 2010
Page 5

2010), and each subsequent Monthly Fee shall be payable in advance on each monthly anniversary of March 20, 2010. The Company shall be permitted to credit, against the Transaction Fee otherwise due to Jefferies under section 4(b), below (but in no event shall the Transaction Fee be less than $0), all amounts of the Monthly Fee payable to Jefferies under this Section 4(a) in excess of $300,000.

(b) Promptly upon consummation of each M&A Transaction (to be paid out of proceeds from the M&A Transaction, a fee (the "M&A Transaction Fee") equal to:

(i) the greater of the aggregate Monthly Fees paid to Jefferies or $500,000, if the Aggregate Transaction Value (as defined below) is less than $20 million, or

(ii) $900,000 if the Aggregate Transaction Value is equal to or greater than $20 million, plus;

(iii) $175,000 if the Aggregate Transaction Value is equal to or greater than $25 million, plus;

(iv) $125,000 if the Aggregate Transaction Value is equal to or greater than $30 million, plus;

(v) 7.5% of every dollar of the Aggregate Transaction Value that is in excess of $40 million and less than $50 million, plus;

(vi) 10.0% of every dollar of the Aggregate Transaction Value that is in excess of $50 million.

At Jefferies' election, the minimum fee payable to Jefferies for each consummated M&A Transaction shall be $250,000 (the "Minimum Fee"); provided, however, that the Company shall be permitted to credit, against the Minimum Fee due to Jefferies, all amounts of the Monthly Fee paid to Jefferies under Section 4(a) that have not previously been credited against a Minimum Fee or a Transaction Fee.

Notwithstanding the foregoing M&A Transaction Fee formula as set forth in Section 4(b) above, in the event that the Company consummates the AKART Transaction (defined below), the total Transaction Fee payable to Jefferies shall be the lower of (i) the amount that would be payable pursuant to Section 4(a) and Section 4(b) and (ii) $1,500,000. "AKART Transaction" shall mean the sale of the Company's Senftenberg, Germany manufacturing facility and Hamilton, NJ manufacturing facility to AKART Enerji Yatirimlari A.Ş. or its wholly owned subsidiary AKART Enerji Fabrika Anonim Siirketi (each and together, "AKART"), on substantially the terms set forth in the transaction documents dated December 7, 2009 (the "Current AKART Transaction Documents"), with such amendments as necessary to provide for the requirement of Bankruptcy Court approval of such M&A Transaction (including, without limitation, compliance with 363 sale procedures and overbid protection) the new equity participant's fees and

**EPV SOLAR, Inc.**

As of March 20, 2010
Page 6

compensation and the modifications to the project timeline set forth in the transaction documents; provided, however, that no cap shall apply in the event that AKART is not the stalking horse bidder and/or the stalking horse or the actual purchase price payable in connection with the AKART Transaction exceed by more than $500,000 the purchase price set forth in the Current AKART Transaction Documents.

"Transaction Value" shall mean (A) the aggregate amount of cash and the fair market value (determined as set forth below) of any securities or other property or consideration directly or indirectly paid in connection with a M&A Transaction, including, (1) the full amount of any consideration placed in escrow or otherwise withheld to support the Company's (or its stockholders') indemnification or similar obligations under the definitive documents with respect to the M&A Transaction, and the full amount of any payments in installments (such escrow and consideration paid in installments, "Escrow Consideration"); and (2) the present value of any contingent consideration to be paid in the future, including earn-outs ("Contingent Consideration"), discounted on the basis of a 6% discount rate; provided that the portion of the Transaction Fee attributable to any Escrow Consideration or Contingent Consideration (collectively, "Deferred Consideration") that is in the aggregate less than 15% of the total Transaction Value shall be paid to Jefferies only if, when and as released from escrow or actually paid (with the portion of the Transaction Fee attributable to Deferred Consideration that is in the aggregate in excess of 15% of the Transaction Value being paid to Jefferies upon the consummation of a Transaction); plus (B) all indebtedness for borrowed money (other than money borrowed from affiliates) and other liabilities (whether consolidated, off-balance sheet or otherwise); provided, however, that any indebtedness and other liabilities released in connection with the Case or that are not assumed or extinguished by a purchaser shall not be deemed to be part of the Transaction Value.

"Aggregate Transaction Value" shall mean the sum of the Transaction Values for all consummated M&A Transactions.

For purposes of computing the Transaction Fee, (x) publicly-traded securities shall be valued at the average of their 4:00 p.m. closing prices (as reported in The Wall Street Journal) for the five trading days prior to the date which is two business days prior to the date of announcement of the M&A Transaction and (y) any other non-cash consideration shall be valued at the fair market value thereof as determined in good faith by the independent members of the Company's Board of Directors and Jefferies.

    (c)    If, following or in connection with the termination, abandonment or failure to occur of any proposed M&A Transaction, during the term of this Agreement or during the twelve-month period following the date of termination of this Agreement, the Company or any affiliate is entitled to receive a break-up, termination, "topping", expense reimbursement, earnest money payment or similar fee or payment (including, without limitation, any judgment for damages or amount in settlement of any dispute as a result of such termination, abandonment or failure to occur), Jefferies shall be entitled to a cash fee (the "Break-Up Fee"), payable promptly following the Company's or such

EPV SOLAR, Inc.
As of March 20, 2010
Page 7

affiliate's receipt of such amount, equal to 25% of the aggregate amount of all fees, payments, judgments or amounts paid to the Company or such affiliate; <u>provided, however</u>, that, the Break-Up Fee shall not be greater than the M&A Transaction Fee that would have been payable had the proposed M&A Transaction been consummated and <u>provided further</u> that if an M&A Transaction is ultimately consummated and a Transaction Fee is payable to Jefferies in connection therewith, any Break-Up Fee previously paid by the Company shall be credited against such Transaction Fee.

(d) Upon the placement or purchase of any Debt Securities, a fee in an amount to be agreed to by Jefferies and the Company, which fee shall be based on the prevailing market for similar services.

(e) Upon the purchase or placement or purchase of any Equity Securities, a cash fee in an amount to be agreed to in good faith by Jefferies and the Company, which fee shall be based on the prevailing market for similar services.

With respect to the placement or arrangement of Bank Debt (other than the DIP Loan), if any, upon the execution of a definitive credit agreement by the Company and the lenders thereunder, a fee to be agreed to in good faith by Jefferies and the Company, which fee shall be based on the prevailing market for similar services.

(f) In the event the Company requests that Jefferies advise the Company with respect to a consent solicitation that is not related to or pursued in connection with a Restructuring, the Company and Jefferies shall mutually agree upon a reasonable fee for such services;

The Company shall use its best efforts to provide for the payment in full, in cash, of any fees and expenses described in this Section 4 in any plan of reorganization submitted to the Bankruptcy Court (as defined below) for confirmation.

The Company acknowledges that in light of Jefferies' substantial experience and knowledge in the restructuring, M&A and capital markets, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring, M&A and capital markets generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services. The Company further acknowledges that it believes Jefferies' general advisory expertise and experience, its knowledge of the capital markets and its other capabilities will inure to the benefit of the Company in connection with any Transaction and that the value to the Company of Jefferies' services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the compensation hereunder is reasonable regardless of the number of hours to be expended by Jefferies' professionals in the performance of the services to be provided hereunder and that none of the fees hereunder shall be considered to be "bonuses" or fee enhancements under applicable law.

EPV SOLAR, Inc.
As of March 20, 2010
Page 8

5.    Expenses.  In addition to any fees or other compensation that may be paid to Jefferies hereunder, whether or not any Transaction occurs, the Company will reimburse Jefferies, promptly upon receipt of an invoice therefor, for all reasonable out-of-pocket expenses (including the reasonable fees and expenses of its counsel, and the reasonable fees and expenses of any other independent experts retained by Jefferies with the Company's consent) incurred by Jefferies and its designated affiliates in connection with the engagement contemplated hereunder in an amount not to exceed $100,000 in the aggregate without the prior written consent of the Company.

6.    Indemnification, etc.  As further consideration under this Agreement, the Company shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A.  The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement.  Neither Jefferies nor its affiliates shall be responsible or have any liability for any indirect, special or consequential damages arising out of or in connection with this Agreement or the transactions contemplated hereby, even if advised of the possibility thereof other than as a result of Jefferies' gross negligence or willful misconduct (as determined by a final, non-appealable judgment of a court).

7.    Waiver of Claims.

(a)    Provided that this Agreement is executed by both the Company and Jefferies and is approved by an order of the Bankruptcy Court (with the time period to appeal such order having expired) that Jefferies finds acceptable, the Company hereby waives, releases and forever discharges Jefferies and any and all of Jefferies' predecessors, successors, assigns, affiliates, related entities and past, present and future members, representatives, agents, directors, officers and employees (of either Jefferies or any and all of Jefferies' predecessors, successors, assigns, affiliates and related entities), individually and in their official capacities, of and from any and all causes of action, claims, damages, judgments or agreements of any kind, whether known or unknown, from the beginning of time to the Effective Date including, but not limited to, any pending, potential or contemplated litigation or arbitration between the Company and Jefferies; provided, however, that the foregoing release shall not be effective if the Bankruptcy Court does not enter a final order approving Jefferies' retention under the terms of this Agreement.  This release excludes any claims that may arise directly out of this Agreement.  For the avoidance of doubt, in the event that the waiver contemplated by this subsection 7(a) is not approved by the Bankruptcy Court, Jefferies reserves the right to immediately resign its representation of the Company and to terminate this Agreement.

(b)    Provided that this Agreement is executed by both the Company and Jefferies and is approved by an order of the Bankruptcy Court (with the time period to appeal such order having expired) that Jefferies finds acceptable, Jefferies hereby waives, releases and forever discharges the Company from liability relating to any debt or equity of the Company that may be held by, or was held by, Jefferies or any member of the

EPV SOLAR, Inc.
As of March 20, 2010
Page 9

Jefferies Group, and hereby disclaims any interest in or rights pursuant to (financial or otherwise) any such debt or equity of the Company provided, however, that the foregoing release shall not be effective if the Bankruptcy Court does not enter a final order approving Jefferies' retention under the terms of this Agreement.

8.   Termination. Jefferies' engagement hereunder will run from the effective date of this Agreement as approved by a final order of the Bankruptcy Court (as defined below) that is acceptable to Jefferies in its sole and absolute discretion (the "Effective Date") to the earlier of the date on which (A) each of these Cases is either (i) dismissed, (ii) converted to cases under chapter 7 of the Bankruptcy Code, or (iii) subject to a plan of reorganization that has been confirmed by the Bankruptcy Court and has become effective, or (B) Jefferies' services hereunder are terminated by either Jefferies or the Company on 30 days' written notice to the other. Upon termination of this Agreement, the Company shall pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder. Upon any termination of this Agreement, the Company shall promptly pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder. In the event of any termination of this Agreement, Jefferies shall be entitled to the applicable fee set forth in Section 4 if the Company enters into an agreement for a Transaction on or prior to that date that is six months from the effective date of termination of this Agreement and such agreement subsequently results in a Transaction (the fee payable in such period being the "Tail Fee"). Any such fee shall be paid as set forth in Section 4. Upon any termination of this Agreement, the rights and obligations of the parties hereunder shall terminate, except for the obligations set forth in Sections 3-8, 10-18, and Schedule A, which shall survive such termination; provided, however, that Jefferies shall not be entitled to the Tail Fee in the event that this Agreement is terminated because the Bankruptcy Court does not enter an order approving Jefferies' retention.

9.   Exclusivity. During the term of the Agreement, the Company agrees that it will not, directly or indirectly, offer or borrow any Instruments, as applicable, solicit an offer to purchase or lend any Instruments, or otherwise contact or enter into a discussion with any person in connection with the structuring, issuance, sale, arrangement, placement, lending or purchase of Instruments, other than through Jefferies. In addition, and without limiting the foregoing, during the term of the Agreement, the Company will not, and will not permit any stockholder, affiliate, or advisor or representative of the Company to engage any other person to perform any services or act in any capacity for which Jefferies has been engaged pursuant to this Agreement with respect to any potential Transaction without the prior written approval of Jefferies (which approval will not be unreasonably withheld); provided, however, that the Company may, in its sole discretion and subject to Bankruptcy Court approval, pay finders' fees in the event that any of the below listed potential M&A Transactions are ultimately consummated. Jefferies hereby consents to such retention and payment provided that such payment shall not be deducted from the Transaction Fee or any other fee due to Jefferies.

EPV SOLAR, Inc.
As of March 20, 2010
Page 10

| Buyer | Broker/Finder |
|---|---|
| AKART | MICG |
| GEM | TAE |
| GF Gafi SA (Swiss)/Empower/Rosnano (Russia) | Kai Michaelsen |
| Ennovate /Solluzion | Jeff Szczepanski |
| Swiss Trans Energy | Jeff Szczepanski |
| third party (to be named) | Pentium Capital |
| Veer Energy /Torrent Power | Jay Shah |
| third party (to be named) | All Green LLC/Beldi SA |
| third party (to be named) | Jeff Szczepanski |
| third party (to be named) | Jeff Szczepanski |

The Company will promptly inform Jefferies of any inquiry it may receive regarding a Transaction. Notwithstanding the Company's obligations hereunder, including, but not limited to, their obligation to pay the fees and expenses of Jefferies and to indemnify Jefferies, it is understood and agreed that Jefferies' sole and exclusive client is the Company, and Jefferies will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

10.    Bankruptcy Approval. The Company shall use its best efforts to obtain prompt approval of this Agreement, pursuant to sections 327 of the Bankruptcy Code, from the Bankruptcy Court. Such approval shall provide for the retention of Jefferies *nunc pro tunc* to the date of this Agreement, shall incorporate all of the terms and conditions herein (explicitly including, but not limited to, the Company's acknowledgements and obligations set forth in Schedule A), shall bind the Company to such terms and conditions, and shall provide that Jefferies' compensation shall be subject to the standard of review provided for in section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code. The Company agrees that the application to retain Jefferies pursuant hereto, and the proposed order in connection therewith, will be subject to the prior approval of Jefferies in its sole and absolute discretion, and agree that this Agreement (except for the obligations under Section 4 and Schedule A hereto) shall be null and void and Jefferies shall have no obligations hereunder unless a final order, no longer subject to appeal, rehearing, reconsideration or petition for certiorari, which is acceptable to Jefferies in its sole and absolute discretion, is entered by the Bankruptcy Court.

11.    Disclaimer.

(a)    The Company acknowledges that Jefferies' parent, Jefferies Group, Inc. (collectively with its subsidiaries and affiliates, the "Jefferies Group") is a full service

EPV SOLAR, Inc.
As of March 20, 2010
Page 11

financial institution engaged in a wide range of investment banking and other activities (including investment management, corporate finance, securities issuing, trading and research and brokerage activities) from which conflicting interests, or duties, may arise. Information that is held elsewhere within the Jefferies Group, but of which none of the individuals in Jefferies' investment banking department involved in providing the services contemplated by this Agreement actually has (or without breach of internal procedures can properly obtain) knowledge, will not for any purpose be taken into account in determining Jefferies' responsibilities to the Company under this Agreement. Neither Jefferies nor any other part of the Jefferies Group will have any duty to disclose to the Company or utilize for the Company's benefit any non-public information acquired in the course of providing services to any other party, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. In addition, in the ordinary course of business, the Jefferies Group may trade the securities of the Company and of potential participants in the transactions contemplated hereby for its own account and for the accounts of customers, and may at any time hold a long or short position in such securities. Jefferies recognizes its responsibility for compliance with federal securities laws and regulations in connection with such activities. Further, the Company acknowledges that from time to time Jefferies' research department may publish research reports or other materials, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Company's interests in connection with the Transaction or otherwise. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences. The Jefferies Group, its directors, officers and employees may also at any time invest on a principal basis or manage or advise funds that invest on a principal basis in any company that may be involved in the transactions contemplated hereby.

(b) The Company acknowledges and agrees that (i) Jefferies will act as an independent contractor hereunder, its responsibility is solely owed to the Company and contractual in nature, and Jefferies does not owe the Company, or any other person or entity (including, without limitation, any securityholders, affiliates, creditors or employees of the Company), any fiduciary or similar duty as a result of its engagement hereunder or otherwise, (ii) Jefferies and its affiliates will not be liable for any losses, claims, damages or liabilities arising out of the actions taken, omissions of or advice given by other parties who are providing services to the Company, (iii) Jefferies is not an advisor as to legal, tax, accounting or regulatory matters in any jurisdiction, (iv) the Company has consulted, and will consult, as appropriate, with its own advisors concerning such matters and shall be responsible for making its own independent investigation and appraisal of this Agreement and the transactions contemplated hereby, and that Jefferies and its affiliates shall have no responsibility or liability with respect thereto, and (v) the Company is capable of evaluating the merits and risks of such transactions and the fees payable in connection therewith and that it understands and accepts the terms, conditions, and risks of such transactions and fees.

EPV SOLAR, Inc.
As of March 20, 2010
Page 12

(c)  In connection with any Transaction involving the offer and sale by the Company of any securities, (i) such sale, including the determination of the price of such securities, shall be an arm's-length commercial transaction between the Company and the other parties to a Transaction (including Jefferies in the event that it acts as an underwriter or initial purchaser), (ii) Jefferies will not be the agent or fiduciary of the Company or its securityholders, affiliates, creditors, employees or any other party, (iii) Jefferies shall not assume fiduciary responsibility in favor of the Company (irrespective of whether Jefferies has advised or is currently advising the Company on other matters) and Jefferies shall have no obligation to the Company with respect to any Transaction except as may be set forth herein or in a Definitive Agreement (as applicable), and (iv) the Company agrees that it will not hold Jefferies liable or responsible in the event that a Transaction is not successfully consummated, including but not limited to, as a result of an adverse change in the financial or securities markets, insufficient demand for instruments similar to the Instruments or lack of interest by investors in the Transaction.

12.  Governing Law. THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK.

13.  Exclusive Jurisdiction. EXCEPT AS SET FORTH BELOW, THE PARTIES AGREE THAT ANY DISPUTE, CLAIM OR CONTROVERSY DIRECTLY OR INDIRECTLY RELATING TO OR ARISING OUT OF THIS AGREEMENT, THE TERMINATION OR VALIDITY OF THIS AGREEMENT, ANY ALLEGED BREACH OF THIS AGREEMENT, THE ENGAGEMENT CONTEMPLATED BY THIS AGREEMENT OR THE DETERMINATION OF THE SCOPE OF APPLICABILITY OF THIS AGREEMENT TO THIS SECTION 11 (ANY OF THE FOREGOING, A "CLAIM") SHALL BE COMMENCED IN THE BANKRPUTCY COURT, WHICH COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER THE ADJUDICATION OF SUCH MATTERS AND SHALL DECIDE THE MERITS OF EACH CLAIM ON THE BASIS OF THE INTERNAL LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW. THE COMPANY AND JEFFERIES AGREE AND CONSENT TO PERSONAL JURISDICTION, SERVICE OF PROCESS AND VENUE OF SUCH COURT, WAIVE ALL RIGHT TO TRIAL BY JURY FOR ANY CLAIM AND AGREE NOT TO ASSERT THE DEFENSE OF FORUM NON-CONVENIENS. THE COMPANY AND JEFFERIES ALSO AGREE THAT SERVICE OF PROCESS MAY BE EFFECTED THROUGH OVERNIGHT MAIL TO THE ADDRESSES SET FORTH OR REFERRED TO IN SECTION 14 HEREOF. THE COMPANY SHALL PAY ALL OF JEFFERIES' REASONABLE COSTS AND EXPENSES (INCLUDING, WITHOUT LIMITATION, REASONABLE FEES AND EXPENSES OF ONE COUNSEL) IN AN ENFORCEMENT PROCEEDING IF THE COURT IN SUCH PROCEEDING DETERMINES THAT JEFFERIES IS ENTITLED TO RECOVER AMOUNTS DUE HEREUNDER. THE COMPANY AND JEFFERIES FURTHER AGREE THAT A FINAL, NON-APPEALABLE JUDGMENT IN RESPECT OF ANY CLAIM BROUGHT IN SUCH COURT SHALL BE BINDING AND MAY BE ENFORCED IN

EPV SOLAR, Inc.
As of March 20, 2010
Page 13

ANY OTHER COURT HAVING JURISDICTION OVER THE PARTY AGAINST WHOM THE JUDGMENT IS SOUGHT TO BE ENFORCED. SUBJECT TO THE AUTOMATIC STAY, THE COMPANY ALSO HEREBY CONSENTS TO PERSONAL JURISDICTION, SERVICE AND VENUE IN ANY COURT IN WHICH ANY ACTION (AS DEFINED IN SCHEDULE A) IS BROUGHT BY ANY THIRD PARTY AGAINST JEFFERIES OR ANY INDEMNIFIED PARTY.

14.  Payments. All payments to be made to Jefferies hereunder shall be non-refundable and made in cash by wire transfer of immediately available U.S. funds. Such fee may be paid by the Company in the form of a "gross spread" or a similar underwriting discount, if Jefferies' role hereunder is that of an underwriter or an initial purchaser. Except as expressly set forth herein, no fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies. The Company's obligation to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim.

15.  Announcements, etc. The Company agrees that Jefferies may, following the announcement of a Transaction or potential Transaction, or Jefferies' role in representing the Company, describe the Transaction or such role in any form of media or in Jefferies' marketing materials, stating Jefferies' role and other material terms of the Transaction and using the Company's name and logo in connection therewith. In addition, as of the date of the approval of Jefferies' retention by the Bankruptcy Court, Jefferies may describe its retention in any form of media or in Jefferies' marketing materials, stating Jefferies' role and other publicly available material terms of the retention and using the Company's name and logo in connection therewith. The Company agrees that any press release it may issue announcing a Transaction will, at Jefferies' request, contain a reference to Jefferies' role in the Transaction.

16.  Notices. Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered (a) if to the Company, at the address set forth above, and (b) if to Jefferies, at 520 Madison Avenue, New York, New York 10022, Attention: General Counsel.

17.  Miscellaneous. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto. This Agreement may not be assigned by either party hereto without the prior written consent of the other, to be given in the sole discretion of the party from whom such consent is being requested. Any attempted assignment of this Agreement made without such consent shall be void and of no effect, at the option of the non-assigning party. This Agreement is solely for the benefit of the Company, Jefferies and, to the extent expressly set forth herein, the Indemnified Persons and no other party shall be a third party beneficiary to, or otherwise acquire or have any rights under or by virtue of, this Agreement; provided that Jefferies may, in the performance of its services hereunder, procure the services of other members of the Jefferies Group (as defined above), which members shall be entitled to the benefits and

**EPV SOLAR, Inc.**

As of March 20, 2010
Page 14

subject to the terms of this Agreement. If any provision hereof shall be held by a court of competent jurisdiction to be invalid, void or unenforceable in any respect, or against public policy, such determination shall not affect such provision in any other respect nor any other provision hereof. The Company and Jefferies shall endeavor in good faith negotiations to replace the invalid, void or unenforceable provisions. Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement. This Agreement may be executed in facsimile or other electronic counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same document. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Jefferies because this Agreement was drafted by Jefferies, and the parties waive any statute or rule of law to such effect.

18.    Patriot Act.    Jefferies hereby notifies the Company that pursuant to the requirements of the USA PATRIOT Improvement and Reauthorization Act. Pub. L. N 109-177 (Mar. 9, 2006) (the "Patriot Act"), it is required to obtain, verify and record information that identifies the Company in a manner that satisfies the requirements of the Patriot Act. This notice is given in accordance with the requirements of the Patriot Act.

**EPV SOLAR, Inc.**
As of March 20, 2010
Page 15

Please sign below and return to Jefferies to indicate your acceptance of the terms set forth herein, and once executed by each of Jefferies and the Company, this Agreement shall constitute a binding agreement between the Company and Jefferies as of the date first written above.

Sincerely,

**JEFFERIES & COMPANY, INC.**

By _____
Name: Steven R. Strom
Title: Managing Director

Accepted and Agreed:

**EPV SOLAR, INC.**

By _____
Name: Howard Brodie
Title: Vice President

EPV SOLAR, Inc.
As of March 20, 2010
Page 15

Please sign below and return to Jefferies to indicate your acceptance of the terms set forth herein, and once executed by each of Jefferies and the Company, this Agreement shall constitute a binding agreement between the Company and Jefferies as of the date first written above.

Sincerely,

**JEFFERIES & COMPANY, INC.**

By _____
    Name:
    Title:

Accepted and Agreed:

**EPV SOLAR, INC.**

By _*[signature]*_____
    Name: Howard Brodie
    Title: Vice President

**EPV SOLAR, Inc.**

As of March 20, 2010
Page 16

SCHEDULE A

Reference is made to the engagement letter attached hereto between Jefferies & Company, Inc. ("Jefferies") and the Company (as defined therein) (as amended from time to time in accordance with the terms thereof, the "Agreement"). Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

Any and all obligations and agreements of the Company under this Schedule A shall be equally applicable to, and binding upon, the Company's bankruptcy estate and any trustee appointed in the Company's Case.

As further consideration under the Agreement, the Company agrees to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, employees and agents, and any other persons controlling Jefferies or any of its affiliates (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against any claims, liabilities, losses, damages, costs and expenses (or any action, claim, suit or proceeding (an "Action") in respect thereof), as incurred, (a) related to or arising out of or in connection with any untrue or alleged untrue statement of material fact contained in the Materials or other information provided by the Company to Jefferies, or omission or alleged omission by the Company to state a material fact necessary to make the statements contained therein, in light of the circumstances in which they were made, not misleading or (b) otherwise related to or arising out of or in connection with Jefferies' services (whether occurring before, at or after the date hereof) under the Agreement, the Transaction or any proposed transaction contemplated by the Agreement or any Indemnified Person's role in connection therewith, whether or not resulting from an Indemnified Person's negligence ("Losses"), *provided*, *however*, that, in the case of the foregoing clause (b), the Company shall not be responsible for any Losses that arise out of or are based on any action of or failure to act by Jefferies to the extent such Losses are determined, by a final, non-appealable judgment by a court, to have resulted primarily from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request of the Company).

Promptly after receipt by an Indemnified Person of notice of the commencement of any Action, such Indemnified Person will, if a claim for indemnification in respect thereof is to be made against the Company, notify the Company in writing of the commencement thereof, but the omission so to notify the Company will not relieve the Company from any liability which the Company may have to any Indemnified Person for contribution, except to the extent (but only to the extent) that it is determined by a court of competent jurisdiction or arbitral tribunal that the Company is actually and materially prejudiced as a result of such failure. In case any such Action is brought against any Indemnified Person and such Indemnified Person seeks or intends to seek indemnity from the Company, the Company will be entitled to participate in, and, to the extent that the Company shall elect by written notice delivered to the Indemnified Person promptly after receiving the aforesaid notice from such Indemnified Person, to assume the defense thereof with counsel reasonably satisfactory to such Indemnified Person; provided, however, if the Indemnified Person shall have received advice from counsel that a conflict may arise between the Company's position and the position of the Indemnified Person in conducting the defense of any such Action or that there may be legal defenses available to the Indemnified Person which are different from or additional to those available to the Company, or if the Indemnified Person has a conflict of interest with such counsel, the Company shall not be entitled to assume the defense of such Action on behalf of such Indemnified Person and the Indemnified Person shall have the right to select separate counsel to assume such legal defenses and to otherwise participate in the defense of such action on behalf of such Indemnified Person. Upon receipt of notice from the Company to such Indemnified Person of the Company's election so to assume the defense of such action, the Company will not be liable to such Indemnified Person for any legal or other expenses subsequently incurred by such Indemnified Person in connection with the defense thereof unless (i) the Company shall not have employed counsel reasonably satisfactory to the Indemnified Person to represent the Indemnified Person within a reasonable time after notice of commencement of such action, (ii) the Company has authorized the employment of counsel for the Indemnified Person at the Company's expense; (iii) the Company failed to assume the defense of such claim; or (iv) such retention is pursuant to the proviso in the preceding sentence (in each of which cases the reasonable fees and expenses of counsel shall be at the Company's expense).

The Company agrees that no Indemnified Person shall have any liability to the Company or its owners, parents, affiliates, securityholders or creditors for any Losses, except to the extent such Losses are determined, by a final, non-appealable judgment by a court, to have resulted primarily from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request of the Company).

**EPV SOLAR, Inc.**

As of March 20, 2010
Page 17

The Company agrees that it will not settle or compromise or consent to the entry of any judgment in, or otherwise seek to terminate, any pending or threatened Action in respect of which indemnification or contribution may be sought hereunder (whether or not any Indemnified Person is a party to such Action) unless Jefferies has given its prior written consent (which consent will not be unreasonably withheld or delayed), or the settlement, compromise, consent or termination (i) includes an express unconditional release of such Indemnified Person from all Losses arising out of such Action and (ii) does not include any admission or assumption of fault on the part of any Indemnified Person. No Indemnified Person seeking indemnification, reimbursement or contribution under this agreement will, without the Company's prior written consent (which shall not be unreasonably withheld or delayed), settle, compromise, consent to the entry of any judgment in any Action referred to herein.

If, for any reason (other than by reason of a final, non-appealable judgment of a court as to the gross negligence or willful misconduct of an Indemnified Person as provided above) the foregoing indemnity is judicially determined to be unavailable to an Indemnified Person for any reason or insufficient to hold any Indemnified Person harmless, then the Company agrees, to the extent permitted by law, to contribute to any such Losses in such proportion as is appropriate to reflect the relative benefits received or proposed to be received by the Company, on the one hand, and by Jefferies, on the other, from the Transaction or proposed Transaction or, if allocation on that basis is not permitted under applicable law, in such proportion as is appropriate to reflect not only the relative benefits received by the Company, on the one hand, and Jefferies, on the other, but also the relative fault of the Company and Jefferies, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement. Relative benefits to the Company, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as (i) the total transaction value of the Transaction or the proposed Transaction bears to (ii) all fees paid or payable to Jefferies in connection with the Agreement.

The Company agrees to reimburse the Indemnified Persons for all reasonable costs and expenses (including, without limitation, reasonable fees and expenses of counsel) incurred by the Indemnified Persons (including all such costs and expenses incurred to enforce the terms of this Schedule A) as they are incurred in connection with investigating, preparing, defending or settling any Action for which indemnification or contribution has or is reasonably likely to be sought by the Indemnified Person, whether or not in connection with litigation in which any Indemnified Person is a named party; provided that, if any such reimbursement are for expenses relating to a Loss that is determined, by a final, non-appealable judgment by a court, to have resulted primarily from Jefferies' gross negligence or willful misconduct (other than an action or failure to act undertaken at the request of the Company), such Indemnified Person shall promptly repay such amount to the Company. If any of Jefferies' professional personnel appears as witness, is deposed or is otherwise involved in the defense of any Action against Jefferies, the Company or the Company's affiliates, officers, managers, directors or employees, the Company will pay Jefferies (i) with respect to each day that such person appears as a witness or is deposed and/or (ii) with respect to each day that such person is involved in the preparation therefor, (a) a fee of $4,000 per day for each such person with respect to each appearance as a witness or a deponent and (b) at a rate of $400 per hour with respect to each hour of preparation for any such appearance, and the Company will reimburse Jefferies for all reasonable out-of-pocket expenses (including, without limitation, reasonable fees and expenses of counsel) incurred by Jefferies by reason of any of its personnel being involved in any such Action.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Company may have to any Indemnified Person at common law or otherwise, (ii) shall survive the expiration or termination of the Agreement or completion of Jefferies' services hereunder, (iii) shall apply to any modification of Jefferies' engagement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Company and successors or assigns to the Company's business and assets and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person.