Order Filed on
5/24/2010
by Clerk U.S. Bankruptcy
Court District of New Jersey

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq. (KR 4963)
S. Jason Teele, Esq. (SJT 7390)
Timothy R. Wheeler, Esq. (TW 3466)
Wojciech F. Jung, Esq. (WJ 2047)
65 Livingston Avenue
Roseland, New Jersey 07068
Tel: (973) 597-2500
Fax: (973) 597-2400
*Counsel to the Debtor*
*and Debtor in Possession*

In re:

EPV SOLAR, INC.,

Debtor.

Chapter 11

Case No. 10-15173 (MBK)

# ORDER APPROVING DEBTOR'S MOTION PURSUANT TO 11 U.S.C. § 105(a) AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002(a)(3) AND 9019(a) FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT AND COMPROMISE BETWEEN AND AMONG THE DEBTOR, DIP LENDERS, TENOR CAPITAL, AD HOC GROUP AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS

The relief set forth on the following page, numbered two (2) is hereby **ORDERED**.

**DATED: 5/24/2010**

*Honorable Michael B. Kaplan*
*United States Bankruptcy Judge*

22892/2
04/30/2010 14283079.1

Page:              2
In Re:             EPV Solar, Inc.
Case No.:          10-15173 (MBK)
Caption of Order:  Order Approving Debtor's Motion Pursuant to 11 U.S.C. § 105(a) and Federal Rules of Bankruptcy Procedure 2002(a)(3) and 9019(a) for Entry of an Order Approving a Settlement and Compromise Between and Among the Debtor, DIP Lenders, Tenor Capital, Ad Hoc Group and Official Committee of Unsecured Creditors

---

Upon the Debtor's Motion[1] Pursuant to 11 U.S.C. § 105(a) and Federal Rules of Bankruptcy Procedure 2002(a)(3) and 9019(a) for Entry of an Order Approving a Settlement and Compromise Between and Among the Debtor, DIP Lenders, Tenor Capital, Ad Hoc Group and Official Committee of Unsecured Creditors; and the Court finding that (a) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (c) the relief requested in the Motion is in the best interests of the Debtor, its estate, and its creditors; (d) adequate notice of the Motion and the hearing thereon has been given and that no other or further notice is necessary; and (e) upon the record herein, after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein,

*

**IT IS HEREBY ORDERED that:**

1. The Motion be, and hereby is, granted.

2. The Term Sheet attached hereto is approved.

3. This Court shall retain exclusive jurisdiction to enforce the terms of this Order and adjudicate any disputes that arise under or in connection with this Order, or any matter related hereto or the Invoice.

4. This Order is effective immediately upon entry.

\* For the reasons expressed by the Court on record at the hearing.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

*Approved by Judge Michael Kaplan May 24, 2010*

# Exhibit A

*Approved by Judge Michael Kaplan May 24, 2010*

**EPV Solar, Inc.**
**Summary of Indicative Terms Of Settlement Among Debtor, Official Committee of Unsecured Creditors, the lenders under the debtor-in-possession financing facility proposed by EPV Solar, Inc., and the Ad Hoc Group of Holders of the 1% Convertible Senior Secured PIK Notes Due 2016**

This Summary of Indicative Terms (the "Term Sheet") sets forth the material terms of the settlement among the Debtor, DIP Lenders, Tenor Capital, Ad Hoc Group and Committee (each, a "Party" and, collectively, the "Parties"). Subject to the confirmation of the Plan, the settlement described herein resolves all outstanding disputes and issues among the Parties in the Bankruptcy Case.

**Certain Definitions**[1]

"Ad Hoc Group" means ad hoc group of holders of the 1% Convertible Senior Secured PIK Notes Due 2016.

"Akart Sale Transaction" means the sale of assets and other transactions the approval of which the Debtor will seek through the Sale Motion.

"Available Cash" has the meaning set forth below.

"Bankruptcy Case" means the chapter 11 case captioned, In re EPV Solar, Inc., Case No. 10-15173 (MBK) pending in the Bankruptcy Court.

"Bankruptcy Code" means chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of New Jersey.

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them, as appropriate, in the Debtor's (1) Motion for Interim and Final Orders (a) Authorizing the Debtor to Obtain Post-Petition Financing, Grant Security Interests and Liens and Accord Priority Status Pursuant to 11 U.S.C. §§ 361, 364(c) and 364(d); (b) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c)(2)(b); (c) Granting Adequate Protection; (d) Giving Notice of Final Hearing Pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2); and (e) Modifying Automatic Stay Pursuant to 11 U.S.C. § 362(d), or (2) Emergency Supplemental Application for A Final Order (a) Authorizing the Debtor to Obtain Post-Petition Financing, Grant Security Interests and Liens and Accord Priority Status Pursuant to 11 U.S.C. §§ 361, 364(c) and 364(d); (b) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363(c)(2)(b); (c) Granting Adequate Protection; (d) Giving Notice of Final Hearing Pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2); and (e) Modifying Automatic Stay Pursuant to 11 U.S.C. § 362(d).

"Committee" means the Official Committee of Unsecured Creditors appointed in the Debtor's chapter 11 case.

"Debtor" means EPV Solar, Inc.

"DIP Lenders" means, collectively, Catalyst Investment Management; Funds investment managed by GLG Partners LP, Jeffrey Parket, Kenneth Calligar, Tenor Capital, and any other lenders under the debtor-in-possession financing facility, including any supplements or modifications thereto, proposed by the Debtor.

"GUC Cash Payment" has the meaning set forth below.

"GUC Shares" has the meaning set forth below.

"Initial Net Proceeds" means, the initial payment received in respect of the Akart Sale Transaction, which payment is anticipated to be received by the Debtor on or before June 1, 2010, less amounts agreed between the Debtor and the Required DIP Lenders to be utilized in accordance with the updated Budget.

"Majority Equity Recipients" means, collectively, the members of the Ad Hoc Group and any person acquiring New Common Stock from any Majority Equity Recipient.

"Net Proceeds" means all amounts received in respect of the Akart Sale Transaction less amounts agreed between the Debtor and the Required DIP Lenders to be utilized in accordance with the updated Budget.

"New Common Stock" means shares of common equity in the Reorganized Debtor issued pursuant to the Plan.

"Plan" means a plan of reorganization pursuant to section 1129 of the Bankruptcy Code filed by the Debtor in the Bankruptcy Case.

"Qualified IPO" shall have the meaning set forth below.

"Reorganized Debtor" means the Debtor, as reorganized and rehabilitated, after the effective date of the Plan.

"Sale Motion" has the meaning set forth below.

"Tenor Capital" means Tenor Capital Management Company, L.P. and/or its affiliates.

**Plan Distributions**

| | |
|---|---|
| GUC Cash Payment: | $375,000 (the "GUC Cash Payment") payable *pro rata* to the holders of allowed general unsecured claims pursuant to the terms of the Plan, provided, that such |

payment shall be made after each of the following obligations have been satisfied in full in accordance with the terms of the Final DIP Financing Order and/or the Plan (as appropriate):

(a) first, to repay any fees, costs or expenses payable to the DIP Agent under the Credit Agreement, (b) second, ratably to repay any principal amounts outstanding in respect of the NM Loans and the Additional New Money Loans, (c) third, to repay the DIP Lenders' and Tenor Capital's respective proportionate shares of the principal amount of Roll-Up Loans and Additional Roll-Up Loans on a 1-to-1 basis in pro-rata amounts equal to $4,670,000 and $3,670,000, respectively (for illustrative purposes only, for every $1 paid, 56% shall be applied to the principal amount of the Roll-Up Loans and 44% shall be applied to the principal amount of the Additional Roll-Up Loans), (d) fourth, to repay any principal amounts outstanding in respect of the remaining Additional Roll-Up Loans, (e) fifth, ratably to repay any principal amounts outstanding in respect of the remaining Roll-Up Loans, (f) sixth, to repay accrued and unpaid interest, the Origination Fee, the Exit Fee and any other fees, costs, expenses and other outstanding DIP Obligations, in each case, with respect to the Additional New Money Loans and the Additional Roll-Up Loans, (g) seventh, ratably to repay accrued and unpaid interest, the Origination Fee, the Exit Fee and any other fees, costs, expenses and other outstanding DIP Obligations, in each case, with respect to the NM Loans and the Roll-Up Loans, (h) eighth, $4.070 million to repay a portion (*i.e.*, 10.6%) of the 1% Convertible Senior Secured PIK Notes Due 2016, but subject to the payments contemplated by the definition of Available Cash set forth below, and (i) ninth, the GUC Cash Payment. The GUC Cash Payment shall be made in accordance with this Term Sheet and shall be made, first, from Net Proceeds and, second, from Available Cash of the Reorganized Debtor in excess of $1.5 million.

"Available Cash" means all of the Reorganized Debtor's cash at any point in time, less the sum of the Debtor's budgeted obligations for the upcoming month on account of (i) payroll, payroll taxes and employee obligations (including bonus and/or other incentive

-3-

|  |  |
|---|---|
|  | payments to the Debtor's management (the "MIP Payments"); provided, that (a) such MIP Payments are made pursuant to an order or orders of the Bankruptcy Court, (b) at the time that the initial portion of the MIP Payment is made, which payment is expected to be made from the Initial Net Proceeds, a partial distribution of the GUC Cash Payment shall be made in the amount of $168,000 and (c) the balance of the MIP Payments shall be paid pari passu with the balance of the GUC Cash Payment); (ii) rent, utilities and lease obligations; (iii) employee benefits and insurance; (iv) execution expenses to perform the Reorganized Debtor's obligations under the Akart Sale Transaction; (v) payments to vendors; and (vi) payments owing to the Senior Secured Noteholders under the Plan. |
|  | Notwithstanding anything herein to the contrary, the GUC Cash Payment shall be paid no later than September 30, 2011. |
|  | In the event that a sale transaction is consummated pursuant to a higher and better offer that is received in accordance with the bidding procedures set forth in the Sale Motion (defined below), then the Parties shall meet in good faith prior to or at the hearing on the Sale Motion (if the contemplated auction occurs prior to the hearing on the Sale Motion) concerning a potential upward adjustment to the GUC Cash Payment. |
|  | Holders of the 1% Convertible Senior PIK Notes Due 2016 (the "Noteholders") shall not be entitled to share in any portion of the GUC Cash Payment on account of any deficiency claims. |
|  | No dividends shall be paid by the Reorganized Debtor unless and until the GUC Cash Payment has been paid in full. |
| Stock: | On the effective date of the Plan, holders of allowed general unsecured claims shall receive shares of New Common Stock, on a *pro rata* basis relative to the New Common Stock delivered to the other equity holders of the Reorganized Debtor, having an aggregate value equal to $450,000 at the Plan valuation (to be determined in the Plan) (the "GUC Shares"). Other Key Terms (described below) apply. |

-4-

| | |
|---|---|
| Committee Professionals' Fees and Expenses: | The fees and expenses of any professionals retained by the Committee pursuant to an order of the Bankruptcy Court shall be capped at the maximum aggregate amount of $375,000 through the effective date of the Plan. The Debtor and Committee shall use reasonable efforts to negotiate a professional fee budget for any period following the Plan's effective date. |

**Other Key Terms**

| | |
|---|---|
| Adjustments to Rights: | If prior to or in connection with the confirmation of the Plan any recipient of New Common Stock receiving less than 3% of the New Common Stock issued pursuant to the Plan is granted Tag-Along Rights or Registration Rights more favorable than those set forth herein, the rights granted to the general unsecured creditors shall be amended to reflect those more favorable terms. |
| Tag Along Rights: | Prior to the consummation of a Qualified IPO, in the event that one or more of the Majority Equity Recipients, acting as a group, propose to sell their shares of New Common Stock in one or a series of related transactions that would result in a change of control, each general unsecured creditor will be entitled to notice of and to sell, on a *pro rata* basis, shares of the GUC Shares held by them at such times and on the same terms and conditions as such Majority Equity Recipients, including with respect to price, form of consideration (subject to customary exceptions in the case of sales by non-accredited investors), escrow arrangements and indemnification obligations, if any, provided that the obligations of the general unsecured creditors with regard to indemnification shall be several and not joint, and shall not exceed the consideration actually received by the respective investor. |
| | A "Qualified IPO" means an underwritten initial public offering of common equity of the Reorganized Debtor for at least $50 million of gross proceeds, other than registrations on Form S-4 (*e.g.*, business combinations) or Form S-8 (*e.g.*, with respect to employee benefit plans). |

-5-

1629282 v2/NY

*Approved by Judge Michael Kaplan May 24, 2010*

| | |
|---|---|
| Drag Along Rights: | Prior to the consummation of a Qualified IPO, if one or more of the Majority Equity Recipients propose to effect a transaction that would give rise to tag along rights, the Majority Equity Recipients may in each such transaction require the general unsecured creditors to sell shares of the GUC Shares on a *pro rata* basis.  In connection with a tag-along or drag-along exercise, the general unsecured creditors shall sell on the same terms and conditions as the Majority Equity Recipients, including with respect to price, form of consideration (subject to customary exceptions in the case of sales by non-accredited investors), escrow arrangements and indemnification obligations, if any, provided that the obligations of the general unsecured creditors with regard to indemnification shall be several and not joint, and shall not exceed the consideration received by the respective investor.  Each general unsecured creditor will be responsible for the fees and expenses of its own legal counsel in connection with any such sale. |
| Registration Rights: | After the consummation of a Qualified IPO, until such time as the shares of the GUC Shares are saleable under Rule 144 or its successor without volume limitation, the general unsecured creditors shall have customary piggyback registration rights with respect to the resale of shares of GUC Shares in underwritten offerings on Form S-3 (subject to customary cutbacks and limitations).  Regarding expenses associated with the piggyback registration rights, the general unsecured creditors wishing to have their shares registered will pay customary underwriting or brokerage commissions and discounts with respect to GUC Shares.  In consideration of the foregoing registration rights, and if similar restrictions are agreed to by the officers and directors of the Debtor (subject to the customary pool available to the officers and directors) holding the same or greater percentage of shares of New Common Stock as are held in the aggregate by such general unsecured creditors, each selling shareholder holding 1% or more of the New Common Stock shall assume customary market standoff obligations relating to sales or other dispositions of the GUC Shares in connection with the offering. |

| | |
|---|---|
| Transferees to Be Bound | Prior to the consummation of a Qualified IPO, any transferee of shares of New Common Stock from any Majority Equity Recipient shall, as a condition precedent to such transfer, agree in writing to be bound by, and to comply with, the terms hereof. Any purported transfer in violation of the foregoing provision shall be void and ineffectual and shall not operate to transfer any interest or title to the purported transferee. The foregoing restrictions shall terminate upon the consummation of a Qualified Public Offering. |
| | Prior to the consummation of a Qualified IPO, any transferee of shares of GUC Shares from any holder thereof shall, as a condition precedent to such transfer, agree in writing to be bound by, and to comply with, the terms hereof. Any purported transfer in violation of the foregoing provision shall be void and ineffectual and shall not operate to transfer any interest or title to the purported transferee. The foregoing restrictions shall terminate upon the consummation of a Qualified Public Offering. |
| Miscellaneous: | Upon approval of this Term Sheet by the Parties, the Committee shall (i) withdraw with prejudice its objection to the DIP Financing Motion (Docket No. 159) and shall not object to the Supplemental Application for DIP Financing or the entry of any orders approving each of the foregoing; and (ii) not object to the Debtor's motion for an order approving the sale of its manufacturing assets to Akart Enerji Yatirimlari A.Ş. or its affiliates (the "Sale Motion") provided, that the terms of the Akart sale are not materially inconsistent with those previously expressed to the Committee and the relief requested therein is not inconsistent with the terms set forth in this Term Sheet. Upon entry of an order approving the Rule 9019 Motion (defined below) the Committee shall (i) withdraw with prejudice its Motion to Convert (Docket No. 137); (ii) not object to the approval of a disclosure statement describing the Plan, provided, that the material terms of the Plan described in such disclosure statement are consistent with the terms set forth in this Term Sheet; (iii) not object to, and each member of the Committee shall timely return a ballot indicating a vote in favor of, the Plan, provided, that the material terms of the Plan are consistent with the terms set forth in this |

-7-

1629282 v2/NY

|  |  |
|---|---|
|  | Term Sheet; (iv) support confirmation of the Plan including, but not limited to, executing a letter in support of the Plan to be included with the Debtor's solicitation materials in connection with confirmation of the Plan; (v) withdraw with prejudice the Objection to Motion to Quash/Cross Motion to Compel Discovery (Docket No. 146) all pending discovery requests directed to any party; and (vi) not object to, or take any action (directly or indirectly) to oppose, any relief sought by the Debtor, Tenor Capital, the DIP Lenders or the Ad Hoc Group if, in such persons' business judgment, the relief sought is necessary or appropriate to confirmation, consummation or feasibility of the Plan or the Sale Motion, <u>provided</u>, that such relief is not inconsistent with the terms set forth in this Term Sheet. |
| Plan: | Any Plan filed with the Bankruptcy Court by the Debtor shall incorporate the terms set forth in this Term Sheet, provided, that the Bankruptcy Court enters an order approving the Rule 9019 Motion.<br><br>Pursuant to the Plan, and in full satisfaction of the Debtor's obligations under the Senior Secured Notes, the DIP Lenders and the Senior Secured Noteholders shall receive (i) all cash payments contemplated herein; and (ii) the conversion of the Senior Secured Notes (less any cash consideration paid in connection with the Plan) into New Common Stock. |
| Bankruptcy Court Approval: | On or before April 30, 2010, the Debtor shall file with the Bankruptcy Court a motion pursuant to, *inter alia*, section 105 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure, for an order approving the terms set forth in this Term Sheet (the "<u>Rule 9019 Motion</u>"). The relief sought in the Rule 9019 Motion, and the settlement described in this Term Sheet, shall be contingent upon the Bankruptcy Court entering an order or orders approving (i) the DIP Financing Motion and Supplemental Application for DIP Financing on a final basis, and (ii) the Sale Motion. Provided that the Rule 9019 Motion is consistent with the terms set forth in this Term Sheet, the Committee, DIP Lenders, Ad Hoc Group and Tenor |

-8-

*Approved by Judge Michael Kaplan May  24, 2010*

|  |  |
|---|---|
|  | Capital each shall support, and not oppose or take any action directly or indirectly to oppose, the Rule 9019 Motion. |
| Effectiveness | This obligation to make the Plan Distributions contemplated by this Term Sheet shall become effective only upon closing of the Akart Sale Transaction or another, similar sale transaction on economic terms no less favorable than the Akart Sale Transaction. |
| Entire Agreement: | This Term Sheet sets forth the entire agreement of the Parties with respect to the subject matter described herein and supersedes and replaces all other prior negotiations, agreements or understandings between the Parties, whether written or oral, relating to the subject matter hereof. |

1629282 v2/NY

*Approved by Judge Michael Kaplan May  24, 2010*